UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            v.<br>MALIK CROCKER,<br><br>                        Defendant. | 13-CR-414 (SHS)<br><br><u>FINDINGS OF FACT AND</u><br><u>CONCLUSIONS OF LAW</u> |

SIDNEY H. STEIN, U.S. District Judge.

      On May 29, 2014, Malik Crocker pled guilty to conspiring to distribute and possess with intent to distribute crack cocaine and was subsequently sentenced to 70 months of imprisonment to be followed by four years of supervised release. Although his term of supervised release was originally scheduled to terminate in December of 2022, Crocker successfully participated in this Court's Reentry through Intensive Supervision and Employment (RISE) program. As a result, the Court granted Crocker a one-year reduction in his term of supervised release. (ECF No. 764.)

      In June of this year, approximately six months before Crocker's term of supervised release was set to expire, the S.D.N.Y. Probation Department filed a Petition for a Violation of Supervised Release ("VOSR") pursuant to Fed. R. Crim. P. 32.1 alleging that Crocker had violated the terms of his supervised release based on three specifications arising from a shooting on May 16, 2021 as follows: (1) Crocker committed the state crime of criminal possession of a weapon-2nd Degree by possessing a loaded firearm intending to cause physical harm to a victim; (2) Crocker committed the state crime of criminal possession of a weapon-2nd Degree by possessing a loaded firearm; (3) Crocker committed the state crime of reckless endangerment-1st Degree by creating a substantial risk of serious physical injury to another.

      The VOSR was later amended to include a fourth specification that on the same date, Crocker committed the federal crime of being a felon in possession of ammunition.

      This Court held a lengthy fact hearing on September 20, November 5, and November 9, during which the government presented exhibits and witnesses and Crocker, represented by counsel, cross examined those witnesses.

## I. FINDINGS OF FACT

### A. Crocker was Present at the Aqua Bar & Grill on the Evening of May 15, 2021

      On May 15, 2021, Crocker was a customer at the Aqua Bar & Grill, located at 2241 Washington Avenue, Bronx, N.Y. He paid for drinks at 11:30 p.m., as evidenced by a credit card receipt containing his first and last name and signature. (GX 205.) Fernando Arturo

Estevez, who worked at Aqua Bar, offered credible testimony that GX 205 was a true and accurate Aqua Bar receipt kept in the company's normal course of business. Tr. 127-128.

At the same time as that credit card transaction was made (GX 205), Crocker can be clearly seen on an Aqua Bar surveillance video (GX 204B) wearing a distinctive red hat and red jacket. Tr. 233-34.

A second surveillance video (GX 204C) shows the defendant socializing with individuals named Ashley Sanchez and Sophia Pinedo at Aqua Bar during the course of that evening. Tr. 234.

### B. May 16, 2021 Shooting Outside of 155-19 Jewel Avenue

Shots were fired outside 155-19 Jewel Avenue, Queens N.Y. in the early morning hours of May 16, 2021. Two shell casings were recovered from the street outside that address that morning. (GX 101.) Body camera footage from N.Y.P.D. Officer Michael Robinson shows police officers locating the two shell casings. (GX 202.) Tr. 38. Photographs GX 103-107 show the location of the recovered shell casings.

Based on the shell casings recovered from the scene (GX 101), the photograph of the shell casing locations (GX 107), and the surveillance video (GX 203) that includes at least one sudden bright muzzle flash indicative of a firearm discharge, the Court concludes that a shooting took place outside of 155-19 Jewel Avenue in the early morning of May 16, 2021 and, as explicated below, that Crocker was the shooter.

### C. Crocker Discharged the Firearm Outside of 155-19 Jewel Avenue

Based on the evidence set forth below, the Court concludes that Crocker was the individual who intentionally fired a gun at a grey sedan as shown in the 155-15 Jewel Avenue surveillance video. (GX 203.)

#### 1. *Det. Martin Wicklow's Credible Testimony Establishes a Connection Between Crocker and both Ashley Sanchez and Sofia Pinedo.*

Det. Martin Wicklow arrived at the scene of the shooting at approximately 5:50 a.m. Wicklow testified that he was "directed to the two witnesses [i.e., Ashley Sanchez and Sophia Pinedo] that patrol had stopped, and conducted interviews with both of them." Tr. 52. Sanchez showed Det. Wicklow her phone: GX 215 and GX 216 are accurate photographs of that phone. GX 215 shows an Instagram post from the account "backend_bread_" including a photograph in which Crocker is wearing a red baseball hat with an "A" letter in front, a distinctive red jacket, white shirt, blue jeans, and white shoes. GX 216 shows an Instagram post from the same account that is also a photograph of Malik Crocker.

2

### 2. Det. Oswaldo Rivera's Credible Testimony Further Establishes a Connection Between Crocker and both Ashley Sanchez and Sofia Pinedo.

Det. Oswaldo Rivera also had interviewed Ashley Sanchez and Sofia Pinedo that morning. Tr. 90. He testified that while interviewing Ashley Sanchez, she showed him an Instagram account of "backend_bread", and in his presence, took screenshots of that account and sent them to Rivera. Tr. 99-100 (referencing GX 208, GX 209, GX 210, GX 211, and GX 212). Rivera further testified that the individual in each Instagram photo was Malik Crocker. Tr. 142. He identified Crocker in the courtroom, Tr. 142, and upon watching surveillance footage of the Aqua Bar & Grill (GX 204A), Rivera identified Crocker as the individual in the red hat and red jacket sitting next to Sanchez. Tr. 146-47. In the same Aqua Bar footage, Rivera also identified Pinedo. Tr. 150. Last, Rivera noted that in the Aqua Bar video, Crocker was holding a receipt and that the manager of the Aqua Bar had provided that receipt to Rivera. *See* GX 205; Tr. 152.

In addition, during Crocker's post-arrest statement to Rivera (GX 206), Rivera showed Crocker the photograph of Crocker that is in GX 214. Rivera testified that GX 214 was a print out of "a screenshot of the . . . Instagram photo that was provided to me by Ashley Sanchez" and that Crocker had initialed it during Rivera's interview of Crocker to indicate that it was a photograph of him. Tr. 160.

### 3. Crocker is the Individual in Surveillance Footage That Discharged the Firearm

The Court has reviewed the surveillance footage of the shooting (GX 203) several times, both before and during the hearing and concludes Malik Crocker is the individual who discharged the firearm at the sedan. Crocker is readily identifiable in the video of the shooting because he wore the same distinctive red jacket, white shirt, red baseball hat, and white shoes that he was wearing just hours before at the Aqua Bar & Grill. (GX 208; GX 214.) Crocker can be seen in the video (GX 203) — which has no sound — raising his right arm in a manner consistent with firing a weapon and a muzzle flash is seen at least once.

Taken together, the evidence described above demonstrates beyond a preponderance of the evidence that Crocker shot two bullets on the early morning of May 16, 2021 at a grey sedan that was driving away from 155-19 Jewel Avenue.

### D. Prior Conviction

As noted above, in 2014, Crocker pled guilty to conspiring to distribute and possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B) and subsequently served a term of 70 months of imprisonment. (ECF No. 570.) He manifestly was aware he had been convicted of a felony.

### E. Interstate Nexus of Ammunition

The Court finds that the casings recovered at the scene of the shooting were part of ammunition that had traveled in and affected interstate commerce prior to May 16, 2021. The GX S1 stipulation provided that if called to testify, a ballistics expert from the Bureau of Alcohol Tobacco Firearms and Explosives would have testified that "the casings were manufactured outside of New York state and traveled in interstate commerce as across the state line at some point prior to May 16, 2021." Tr. 40-42. The Court accepts the terms of that stipulation.

## II. DEFENDANT'S HEARSAY AND CONFRONTATION CLAUSE OBJECTIONS ARE MOOT

Throughout the evidentiary hearing, the government sought admission of statements made to N.Y.P.D. officers on the morning of the shooting by Ashley Sanchez and Sophia Pinedo, each of whom had witnessed the shooting. Neither testified at the hearing and defense counsel consistently objected to the admission of their statements on the grounds that such statements were hearsay and that Crocker had a right to cross-examine any adverse witnesses. *See* Fed. R. Crim. P. 32.1(b)(2)(C).

There is no need for the Court to resolve that issue of law, however, because for purposes of these findings of fact and conclusions of law, the Court has not considered any statements made by Ashley Sanchez or Sofia Pinedo.

## III. CONCLUSIONS OF LAW

The Court now considers whether the government has met its burden of showing by a preponderance of evidence that Malik Crocker engaged in each of the four specifications charged.

### 1. Specification 1, N.Y. Penal Law § 265.03(1)(b)

"A person is guilty of criminal possession of a weapon in the second degree when: (1) with intent to use the same unlawfully against another, such person: . . . (b) possesses a loaded firearm." *See* N.Y. Penal Law § 265.03(1)(b). Accordingly, the government needs to prove the following elements:

1. That on or about May 16, 2021, Malik Crocker possessed a firearm;
2. That he did so knowingly;
3. That the firearm was loaded and operable; and
4. That Crocker possessed the loaded firearm with the intent to use it unlawfully against another.

The Court has already found that Malik Crocker possessed and intentionally discharged a firearm on May 16, 2021 in the direction of a grey sedan. Because the government has shown all four elements by a preponderance of the evidence, the Court finds that Crocker has committed the violation charged in Specification 1.

### 2. *Specification 2, N.Y. Penal Law § 265.03(3)*

"A person is guilty of criminal possession of a weapon in the second degree when: . . . such person possesses any loaded firearm." *See* Penal Law § 265.03(3). Accordingly, the government needs to prove the following elements:

1. That on or about May 16, 2021, Malik Crocker possessed a firearm;
2. That he did so knowingly; and
3. That the firearm was loaded and operable.

The Court has already found that Crocker possessed and intentionally discharged a firearm on May 16, 2021 in the direction of a grey sedan. Because the government has shown all three elements by a preponderance of the evidence, the Court finds that Crocker has committed the violation charged in Specification 2.

### 3. *Specification 3, N.Y. Penal Law § 120.25*

"A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." *See* N.Y. Penal Law § 120.25. Accordingly, the government needs to prove the following elements:

1. That on or about May 16, 2021, Malik Crocker, recklessly engaged in conduct which created a grave risk of death to another person; and
2. That he did so under circumstances evincing a depraved indifference to human life.

Crocker contends that under controlling New York law—namely *People v. Suarez*, 6 N.Y.3d 202 (2005) and *People v. Jones*, 100 A.D.3d 1362, 953 N.Y.S.2d 416 (4d Dep't 2012)—a reckless endangerment charge in the first degree is not sustainable when a single person is the intended target of a shooting. Here, it is uncontested that the two shots were fired at a vehicle with only the driver in the car and no one else in the line of fire. Tr. 261.

The government responds by simply noting that "Mr. Crocker is seen on video shooting at the exboyfriend who, yes, was in a car, but bullets can pass through cars. . . . the fact of the matter remains that Crocker fired two shots at the exboyfriend who was in the gray sedan." Tr. 265.

#### i. Grave Risk of Death to Another Person

The Court first considers the element that Crocker created a "grave risk of death to another person." Under a plain reading of the statute, the Court would have been inclined to find that Crocker "recklessly engaged in conduct which created a grave risk of death to another person" by firing two shots at the occupied grey sedan. *Cf. United States v. Legros*, 529 F.3d 470, 475 (2d Cir. 2008) ("Shooting a gun into the air in a residential area is of course risky. But nothing in the record indicates that the district court found such conduct created

5

a 'grave risk of death'"). However, New York law holds that "grave risk of death to another person" means endangerment of someone *other* than a defendant's target. This is most clearly set forth in *People v. Scott*, as follows:

> The defendant argues that the evidence of his guilt of reckless endangerment in the first degree was legally insufficient since the People failed to prove that anyone other than Mr. Lee was endangered by his conduct. We agree. Contrary to the People's contention that the defendant's conduct endangered unspecified "residents of the neighborhood," they presented no evidence that any person other than Mr. Lee "was in or near the line of fire" (*People v. Bennett*, 193 A.D.2d 808, 809, 598 N.Y.S.2d 84) and, thus, failed to prove that the defendant's conduct created "a grave risk of death" to any such person (Penal Law § 120.25).

70 A.D.3d 978, 979, 894 N.Y.S.2d 532, 533-34 (2d Dep't 2010).

Here, the government has presented no evidence that any individual was at "grave risk of death" apart from the sole driver of the grey sedan in the surveillance video. Therefore, the Court cannot find there was a "grave risk of death to another person" necessary for element one of N.Y. Penal Law § 120.25. *Cf. People v. Lovett*, 25 N.Y.3d 1088, 1089–90 (2015) (a high-speed car chase on the West Side Highway in Manhattan.); *People v. Schlackman*, 153 A.D.3d 641, 641, 57 N.Y.S.3d 409, 409 (2d Dep't 2017) (defendant "placed a tub of gasoline at the front door of the home of the boyfriend of the mother of his children, and attempted to light it on fire").

Therefore, the government has not met its burden of showing element one by a preponderance of evidence.

ii. Depraved Indifference to Human Life

After considering the element that Crocker created a "grave risk of death to another person," the Court turns to whether the government has shown that Crocker exhibited "depraved indifference to human life" during the shooting. As the New York Court of Appeals explains, "depraved indifference" is itself a mens rea requirement: "depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not." *People v. Feingold*, 7 N.Y.3d 288, 296 (2006). *See also United States v. Legros*, 529 F.3d 470, 475 (2d Cir. 2008) ("Under New York law, depraved indifference to human life is a 'culpable mental state.'") (citing N.Y. Penal Law § 120.25; *Feingold*, 7 N.Y.3d at 294).

New York's highest court has also noted that "there is no dispute that the term 'depraved indifference' has the same meaning in both the depraved indifference murder statute and the reckless endangerment statute." *Feingold*, 7 N.Y.3d at 290. Therefore, the Court looks to state law defining depraved indifference in both contexts. As the New York Court of Appeals set forth in *People v. Suarez*:

6

> Historically, depraved indifference murder had no application at all to one-on-one killings. Accordingly, in *Darry v. People,* this Court held that a conviction for "depraved mind" murder required conduct that endangered many people indiscriminately, reflecting cases in which the defendant did not wish to kill or injure any particular individual, but had no care for whether the life of any particular person was lost or not. . . . Depraved indifference murder is not a lesser degree of intentional murder. Moreover, someone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies. By definition, "[s]erious physical injury" includes injury "which creates a substantial risk of death, or which causes death" (Penal Law § 10.00[10]). Thus, one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, is guilty only of manslaughter in the first degree. Otherwise, every intentional manslaughter would also establish depraved indifference murder—a result plainly at odds with the discrete classifications set forth in the statute. Since a defendant who intends to injure or kill a particular person cannot generally be said to be "indifferent"--depravedly or otherwise--to the fate of that person, we underscore what we said in [*People v.* ] *Payne*[, 3 N.Y.3d 266, 272 (2004)]: "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."

6 N.Y.3d 202, 210-12 (2005) (internal citations omitted).

Accordingly, for the government to prove that Crocker acted with "depraved indifference to human life" as defined by New York state courts, it must show that Crocker knew that his discharge of a gun would place at least one individual apart from the driver of the grey sedan at grave risk of death. *See* People v. Sallitto, 125 A.D.2d 345, 346, 508 N.Y.S.2d 612, 613 (2d Dep't 1986) (where the "defendant fired one or more shots in the general direction of Park Avenue, at least one of which hit an object 10 feet short of the roadway," there was insufficient evidence to "establish that the defendant acted under circumstances evincing a depraved indifference to human life"); *see also Santana-Felix v. Barr*, 924 F.3d 51, 56 (2d Cir. 2019) ("Depraved indifference to human life has been defined by New York courts as 'conduct ... so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another.' Depraved indifference thus necessarily requires a showing of a heightened disregard for human life.") (internal citations omitted); *cf. People v. Summerville*, 22 A.D.3d 692, 692, 802 N.Y.S.2d 508, 508 (2d Dep't 2005) ("The evidence produced at trial that the defendant fired a gun on a public street in the direction of at least two individuals, and in close proximity to several others, was legally sufficient to establish that he acted with a 'depraved indifference to human life.'").

Because the government has not shown that Crocker had the mens rea of depraved indifference to human life as defined in New York law, the government has not met its

7

burden of showing the second element of N.Y. Penal Law § 120.25. *United States v. Legros*, 529 F.3d 470, 475 (2d Cir. 2008) ("An enhancement for reckless endangerment could be imposed only if the district court properly found that his conduct created a 'grave risk of death' and that he acted with a *mens rea* of 'depraved indifference to human life.'") (citing N.Y. Penal Law § 120.25).

Consequently, because the Court finds that the government has not proven either of the elements of N.Y. Penal Law § 120.25 by a preponderance of the evidence, the Court cannot find that Crocker has committed the violation charged as Specification 3.

### 4. *Specification 4, 18 U.S.C. § 922(g)(1)*

"It shall be unlawful for any person-- (1) who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year; . . . to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *See* 18 U.S.C. § 922(g). Accordingly, the government needs to prove the following elements:

> 1. That Crocker knew he had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, prior to the date he allegedly possessed the ammunition;
> 2. That on or about May 16, 2021, he knowingly possessed ammunition; and
> 3. That the possession of the ammunition was in or affecting interstate or foreign commerce.

As noted above, the Court has found that Crocker had previously been convicted of a felony and that Crocker was aware of this conviction. The Court has also found that Crocker knowingly possessed ammunition on May 16. Last, the ammunition found at the scene of the crime—and which the Court finds Crocker used—was both in and affecting interstate commerce. Because the government has shown all three elements by a preponderance of the evidence, the Court finds that Crocker has committed the violation charged in Specification 4.

## IV. CONCLUSION

The Court finds that (1) Crocker has violated Specifications 1, 2, and 4 of the Amended Violation Report dated September 14, 2021 and (2) the government has not proven that he violated Specification 3. Sentencing shall take place in Courtroom 23A of the U.S. Courthouse at 500 Pearl Street, New York, N.Y. on January 25, 2022 at 12:00 p.m. Defendant shall submit his sentencing materials no later than January 6, 2022. The government shall provide its submission no later than January 17, 2022.

Dated:   New York, New York
         December 21, 2021

                              SO ORDERED:

                              _____
                              Sidney H. Stein, U.S.D.J.