

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 17, 2022

**BY ECF**

Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: *United States v. Malik Crocker*, 13 Cr. 414 (SHS)

Dear Judge Stein,

  The Government respectfully submits this letter in advance of the defendant Malik Crocker's sentencing in this violation of supervised release ("VOSR") proceeding, currently scheduled for January 25, 2022 at noon. In a written decision filed on December 20, 2021, this Court found Crocker guilty of specifications 1, 2, and 4 in the Amended Violation Report. For the reasons explained below, in particular, the serious nature of the specifications, the Government submits that a statutory maximum sentence of three years would be most appropriate in this case.

  **A. Factual Background and Procedural History**

  Crocker was a member of the Burnside Money Getters gang, also known as "BMG." (PSR ¶ 14.) BMG distributed and trafficked drugs in the Bronx, New York. (*Id.*) Crocker was BMG's most prodigious drug dealer; he sold narcotics for himself and supplied other dealers with drugs. (PSR ¶ 47, 51, 57, 59-62, 66, 73; *see also* Gov't Sentencing Submission dated Mar. 23, 2015.) Crocker was known to possess firearms as a part of his and BMG's drug dealing operation. (*See* PSR ¶ 43, 72.)

  On March 30, 2015, after a plea of guilty to conspiracy to distribute and possess with intent to distribute crack cocaine in violation of 21 USC §§ 846, 841(b)(1)(b), this Court sentenced Crocker to 70 months' imprisonment and four years' supervised release. Crocker began his term of supervised release on December 6, 2018.

  In February 2020, Crocker was offered an opportunity to participate in RISE Court (Reentry through Intensive Supervision and Employment), a reentry program. On March 16, 2021, Crocker successfully completed the RISE Court program, and on April 8, 2021, this Court granted

Hon. Sidney H. Stein
January 17, 2022

Crocker a one-year reduction in his term of supervised release due to his completion of the RISE Court program. (Dkt. No. 764.)

On May 16, 2021—a mere five weeks after the Court rewarded the defendant with a one-year reduction on his four-year term of supervise release—Malik Crocker fired two shots in the direction of two people. (*See* Dkt. No. 822 at p.3.) Crocker's brazen and reckless conduct placed the lives of these people in serious jeopardy. One of the people whom Crocker endangered, Ashley Sanchez, appeared visibly shaken in the moments after the shooting—Crocker's conduct was undoubtedly serious and life threatening.

On June 11, 2021, the Probation Office charged the defendant with violating the terms of supervised release in three specifications: (1) committing the state law crime of criminal possession in the second degree, in that he possessed a loaded firearm with the intent to cause physical harm; (2) committing the state law crime of criminal possession of a loaded firearm in the second degree, in that he possessed a loaded firearm; and (3) reckless endangerment in the first degree, in that he created a substantial risk of serious physical injury to another. (*See* June 11, 2021 Violation Report.) The initial Violation Report was amended on September 14, 2021, to add a fourth specification: committing the federal crime of being a felon in possession of ammunition. (*See* Amended Violation Report.)

An evidentiary hearing was held over three days, September 20, November 5, and November 8, 2021. On December 20, 2021, the Court found that the Government had proven specifications 1, 2, and 4 by a preponderance of the evidence. (*See* Dkt. No. 822.)

**B. Discussion**

    **i. Applicable Law**

When a defendant violates the conditions of his supervised release, a court may revoke the term of supervised release and impose a term of imprisonment after considering the factors listed in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). *See* 18 U.S.C. § 3583(e)(3). Here, because the defendant was originally convicted of a Class B Felony, the maximum term of imprisonment the Court can impose is 36 months. *Id.*

"[T]he primary goal of a revocation sentence" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see also United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007).

    **ii. A Statutory Maximum Sentence Is Appropriate In This Case**

A statutory maximum sentence of three years is appropriate here for several reasons.

Hon. Sidney H. Stein
January 17, 2022

*First*, the violation at issue represents a significant breach of trust that this Court placed in the defendant to abide by the terms of his supervised released. The Court trusted the defendant, like all defendants, to follow the terms of his supervision, including the most basic term—not committing additional crimes. The defendant has breached the Court's trust by committing several very serious crimes while on supervised release.

*Second*, the defendant took advantage of this Court's leniency. At sentencing for his underlying narcotics conspiracy conviction, this Court gave the defendant a below-Guidelines sentence in large part because of his age. (*See* Sentencing Tr. 20-21.) The Court noted that the need for "individual and general deterrence" as to Crocker was also an important factor in meting out the sentence. (Sentencing Tr. 21:9-10.) The Court was again lenient with the defendant when it reduced his term of supervised release by a year. (*See* Dkt. No. 764.) But the defendant entirely failed to comply with his supervised release conditions notwithstanding the Court's leniency. Nor did the defendant take advantage of the opportunity afforded him by this Court; instead, he insulted the Court's leniency and engaged in extremely serious conduct—unlawfully possessing ammunition while being a felon and firing that ammunition at other people, placing the lives of at least two individuals in serious danger. Crocker should be sanctioned accordingly. *See United States v. Verkhoglyad*, 516 F.3d 122, 133 (2d Cir. 2008) (holding that the District Court appropriately considered past "sentencing breaks" received by the defendant when imposing a revocation sentence).

The defense argues for a sentence of time served because the defendant faces "serious State charges" arising from the same conduct at issue here. (Defense Sentencing Submission a 1.) The Court should not be swayed by this argument because further leniency would do nothing to recognize the separate violation that the defendant committed—possessing ammunition despite being a felon on supervised release and firing that ammunition at other people. Nor does that argument take into consideration the seriousness of the defendant's conduct—putting at least two people's lives in danger. Thus, a statutory maximum sentence would send a message that such behavior will not be tolerated.

*Third*, there is a pressing need to protect the public from the defendant. The defendant has continued engaging in serious criminal conduct despite the multiple terms of incarceration he has already served. The defendant was not deterred by his initial 18-month reformatory term of incarceration. (PSR ¶ 90.) Indeed, the Court noted at sentencing that the defendant "had an earlier opportunity" when he was sent to a reformatory instead of prison for his first conviction of attempted robbery, and that one "would think, that that would tell you that if you commit further crimes, you're going to be sentenced to prison." (Sentencing Tr. 20:2-7.) Nor was the defendant deterred by the 70-month prison term that he received for his underlying federal narcotics conviction. (Dkt. No. 570 at p. 2.) As the Court found, only a few weeks after receiving a reduced term of supervised release, the defendant fired two shots at other people. Crocker has demonstrated that he has not been deterred from engaging in serious life-threatening criminal conduct. And so, the overriding concern is protecting the public from the defendant who, at the age of 29, has not proven himself amenable to rehabilitation.

Hon. Sidney H. Stein
January 17, 2022

### C. Conclusion

For the reasons set forth above, the Government respectfully submits that a statutory maximum sentence of three years' imprisonment would be most appropriate here.

Respectfully submitted,

DAMIAN WILLIMAS
United States Attorney

by: _____
Camille L. Fletcher
Christopher J. DiMase
Assistant United States Attorney
Southern District of New York
(212) 637-2383

cc: Sam H. Schmidt, Esq. (via ECF)